PRESENT: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Goodwyn, JJ., and Russell, S.J.

WILLIAM JOSEPH BURNS

                                        OPINION BY
v.   Record No. 090863          JUSTICE S. BERNARD GOODWYN
                                        January 15, 2010
COMMONWEALTH OF VIRGINIA

           FROM THE CIRCUIT COURT OF SHENANDOAH COUNTY
                     Dennis L. Hupp, Judge

     In this appeal we consider whether the circuit court erred

in granting summary judgment to the Commonwealth in a proceeding

remanded to the circuit court, pursuant to Code § 8.01-654.2,

for determination of a claim of mental retardation by a person

sentenced to death for a capital offense.

           Background and Material Proceedings Below

     The Circuit Court of Shenandoah County convicted Burns of

capital murder, among other crimes, and sentenced him to death.

This Court upheld Burns' capital conviction and sentence on

direct appeal.  Burns v. Commonwealth, 261 Va. 307, 541 S.E.2d

872 (2001).

     Burns raised a claim of mental retardation in habeas corpus

proceedings in this Court.  While his petition was pending, the

Supreme Court of the United States decided Atkins v. Virginia,

536 U.S. 304, 321 (2002), which prohibits execution of persons

who are mentally retarded.  In response thereto, the General

Assembly enacted legislation implementing procedures governing

the determination of the mental retardation of individuals

facing a capital sentence.  Code §§ 8.01-654.2; 19.2-264.3:1; 19.2-264.3:1.1; 19.2-264.3:1.2; 19.2-264.3:3; and 19.2-264.4; see also Atkins v. Commonwealth, 266 Va. 73, 79, 581 S.E.2d 514, 517 (2003) (describing these statutes as emergency legislation enacted in response to the holding of the Supreme Court of the United States in Atkins v. Virginia).  Thereafter, this Court determined that Burns' claim of mental retardation was not frivolous and, after two rehearings, remanded his case to the Circuit Court of Shenandoah County, pursuant to Code § 8.01-654.2, for a jury determination of his mental retardation claim. Burns v. Warden, 269 Va. 351, 354, 609 S.E.2d 608, 610-11 (2005).

## Mental Retardation Proceeding

In the instant remanded proceeding concerning Burns' claim of mental retardation, Burns' counsel began to notice that Burns was exhibiting odd behavior and questioned Burns' competence.[*] Dr. J. Gregory Olley, the psychologist appointed by the circuit court pursuant to Code § 19.2-264.3:1.2 to assist Burns,

---

[*] During his original criminal trial, Burns was evaluated and found to be incompetent and unable to aid in his own defense.  Burns received medication and treatment that restored his competency.  After Burns was restored to competency, his trial proceeded and he was convicted of capital murder.  Burns v. Commonwealth, 261 Va. at 313, 541 S.E.2d at 877.  After Burns' conviction, the forensic psychological unit evaluated him.  The evaluator, Dr. Mario J.P. Dennis, found that Burns experienced a psychotic disorder that included personality

2

concluded that Burns' mental health had to be addressed before he could complete a mental retardation evaluation on Burns in conformity with the requirements mandated by Code § 19.2-264.3:1.1. Additionally, a neuropsychiatrist appointed by the circuit court determined that Burns suffered from "psychosis, impairment of autobiographical memory, derailment of language and thought, and significant social deterioration," which rendered Burns incompetent to rationally assist counsel in his own defense. Burns' counsel filed a motion to declare Burns incompetent and to secure treatment, pursuant to Code § 19.2-169.2, to restore Burns to competence.

The Commonwealth filed a motion opposing the motion to declare Burns incompetent and a motion to change the style of the case. The Commonwealth argued that the instant matter was not a criminal proceeding, nor a post-conviction habeas proceeding, but instead a "specific proceeding" created by the General Assembly. According to the Commonwealth, the proceeding, authorized by Code § 8.01-654.2, was a "collateral, post conviction proceeding," and because Burns was not a defendant in a criminal matter, he did not have a Sixth Amendment right to be competent in the proceeding. Thus, the Commonwealth argued, Code §§ 19.2-169.1 and 19.2-176, which

decompensation, social withdrawal and disordered affect, and erratic, possibly assaultive behavior.

guarantee a criminal defendant the right to a competency evaluation before and after sentencing, were inapplicable. The Commonwealth requested the style of the case be changed to In re: William Joseph Burns or Burns v. Warden to reflect the unique nature of the proceeding.

Burns filed a motion in opposition to the Commonwealth's motions, arguing that the statutory scheme for mental retardation determinations allows Burns to retain his criminal trial rights. Burns also argued that this Court had already rejected the Commonwealth's arguments when it stated in Burns v. Warden that all defendants in capital cases who allege mental retardation, regardless of the procedural posture of their cases on the date that Atkins v. Virginia was decided, are afforded the same procedures by statute. Burns v. Warden, 268 Va. 1, 3, 597 S.E.2d 195, 196 (2004), aff'd on reh'g, 269 Va. 351, 352-54, 609 S.E.2d 608, 609-11 (2005).

The circuit court heard argument on the motions and ruled that the proceeding was a specific proceeding that was neither wholly civil nor wholly criminal. The circuit court changed the caption of the case to In re: William Joseph Burns. Noting that Burns was the moving party, the circuit court ruled that, as in a civil case, Burns' competence was irrelevant because he was represented by counsel, and declined to determine Burns' competence. A trial date was set for the special proceeding,

4

along with the dates for expert reports to be exchanged beforehand.

At the time designated for the filing of expert disclosures, Burns filed a notice stating that he did not intend to present expert testimony in support of his claim. Attached to the notice was a declaration from Dr. Olley. In his declaration, Dr. Olley stated that Burns was not competent to stand trial because of his psychosis. Dr. Olley further stated that Burns' psychosis interfered with his attempts to assess Burns' intellectual functioning in conformity with accepted professional practice and that professional practice obliged him to address Burns' mental illness before administering a standardized intelligence test.

Responding to this filing, the Commonwealth filed a "Motion for a Final Order." In this motion, the Commonwealth argued that expert testimony was necessary to prove whether Burns was, in fact, mentally retarded because the relevant statute requires proof of significant limitations in intellectual functioning and adaptive behavior that must be assessed in conformity with specific professional standards. See Code § 19.2-264.3:1.1(A). The Commonwealth stated that Burns' notice that he did not intend to present expert testimony was an admission of a failure of proof and an implied withdrawal or waiver, which entitled the Commonwealth to judgment.

5

At the hearing on the Motion for Final Order, the circuit court reiterated that Burns' competence was not at issue because the proceeding was not a criminal proceeding. The circuit court opined that the presence of competent counsel was enough for Burns to go forward with the proceeding. Because Burns admitted that he lacked an expert witness on the issue of whether he is mentally retarded, the circuit court ruled that Burns could not satisfy his burden of proof on the mental retardation issue. The circuit court granted the Commonwealth's Motion for a Final Order, treating it as a motion for summary judgment. We granted Burns' petition for appeal.

## Analysis

Burns argues that because the remanded proceeding was not a civil proceeding, but rather a criminal or quasi-criminal proceeding, the circuit court erred in granting summary judgment in favor of the Commonwealth and in ruling the issue of Burns' mental competence was not relevant. The Commonwealth responds that the proceeding in the circuit court was not a criminal trial or a criminal sentencing, but rather a "specific" proceeding created to determine a claim raised in a habeas petition; Burns was not entitled to the rights of a criminal defendant because the proceeding was civil in nature. Also, the Commonwealth argues, because the proceeding on remand was civil in nature, the circuit court did not err in ruling that the

6

issue of Burns' mental competence was irrelevant and in granting summary judgment based on Burns' lack of an expert witness.

In order to decide the issues presented in this case, we must first determine whether the adjudicatory procedure mandated by Code § 8.01-654.2 is criminal or civil in nature. Whether a statutory scheme is civil or criminal is an issue of statutory construction. Smith v. Doe, 538 U.S. 84, 92 (2003). Courts, when conducting a statutory construction analysis, "consider the statute's text and its structure to determine the legislative objective." Id. This Court reviews issues of statutory construction de novo. Farrakhan v. Commonwealth, 273 Va. 177, 180, 639 S.E.2d 227, 229 (2007).

Burns' mental retardation determination was remanded to the Circuit Court of Shenandoah County pursuant to Code § 8.01-654.2. This statute is one of several promulgated by the General Assembly in direct response to Atkins v. Virginia, 536 U.S. at 321. See Atkins v. Commonwealth, 266 Va. at 79, 581 S.E.2d at 517.

In Atkins v. Virginia, the Supreme Court of the United States held that it was unconstitutional to execute a mentally retarded individual. 536 U.S. at 321. The analysis in Atkins v. Virginia focused on the Eighth Amendment, which protects citizens and residents from cruel and unusual punishment. Id. The Eighth Amendment prohibits "excessive" sanctions and as a

7

precept of justice "punishment for crime should be graduated and proportioned to the offense." Id. Atkins v. Virginia left it to the states to determine which individuals are so impaired as "to fall within the range of mentally retarded offenders about whom there is a national consensus." Id. at 317.

In 2003, the General Assembly enacted Code §§ 19.2-264.3:1.1 and 19.2-264.3:1.2 establishing the procedure for determining defendants' future claims of mental retardation arising in capital murder cases. Code § 19.2-264.3:1.1 defines mental retardation and states the requirements for assessing mental retardation for purposes of a capital sentencing. The statute states that "the issue of mental retardation, if raised by the defendant in accordance with the notice provisions" in Code § 19.2-264.3:1.2, shall be determined as part of the sentencing proceeding required in capital cases pursuant to Code § 19.2-264.4. Code § 19.2-264.3:1.1(C). Code § 19.2-264.3:1.2 provides for a defendant to have expert assistance when the issue of the defendant's mental retardation is relevant to a capital sentencing.

The General Assembly also enacted Code § 8.01-654.2 in 2003. It provides redress for certain individuals who had been sentenced to death before April 29, 2003. Code § 8.01-654.2 states:

8

Notwithstanding any other provision of law, any person under sentence of death whose sentence became final in the circuit court before April 29, 2003, and who desires to have a claim of his mental retardation presented to the Supreme Court, shall do so by one of the following methods: (i) if the person has not commenced a direct appeal, he shall present his claim of mental retardation by assignment of error and in his brief in that appeal, or if his direct appeal is pending in the Supreme Court, he shall file a supplemental assignment of error and brief containing his claim of mental retardation, or (ii) if the person has not filed a petition for a writ of habeas corpus under subsection C of § 8.01-654, he shall present his claim of mental retardation in a petition for a writ of habeas corpus under such subsection, or if such a petition is pending in the Supreme Court, he shall file an amended petition containing his claim of mental retardation. A person proceeding under this section shall allege the factual basis for his claim of mental retardation. The Supreme Court shall consider a claim raised under this section and if it determines that the claim is not frivolous, it shall remand the claim to the circuit court for a determination of mental retardation; otherwise the Supreme Court shall dismiss the petition. The provisions of §§ 19.2-264.3:1.1 and 19.2-264.3:1.2 shall govern a determination of mental retardation made pursuant to this section. If the claim is before the Supreme Court on direct appeal and is remanded to the circuit court and the case wherein the sentence of death was imposed was tried by a jury, the circuit court shall empanel a new jury for the sole purpose of making a determination of mental retardation.

If the person has completed both a direct appeal and a habeas corpus proceeding under subsection C of § 8.01-654, he shall not be entitled to file any further habeas petitions in the Supreme Court and his sole remedy shall lie in federal court.

Pursuant to Code § 8.01-654.2, once this Court decides, as a threshold issue, that the claim of mental retardation is not frivolous, the claim is remanded to the circuit court to

9

determine the issue of mental retardation.  The requirement that a nonfrivolous claim be remanded applies whether the claim is raised in the context of a direct appeal or a petition for habeas corpus.  Burns v. Warden, 269 Va. at 353, 609 S.E.2d at 610.  Code § 8.01-654.2 provides a single, specific procedure to determine the issue of mental retardation, regardless of the context in which the issue arises.  Id.  Adjudication of the issue of mental retardation does not occur as part of a direct appeal or habeas corpus proceeding in this Court, but in the specific proceeding, established through Code § 8.01-654.2, to be conducted on remand.  Id.

Code § 8.01-654.2 directs that the provisions of Code §§ 19.2-264.3:1.1 and 19.2-264.3:1.2 govern the determination of mental retardation on remand.  Those same criminal procedure statutes govern the determination of the mental retardation claims of individuals charged with or convicted of capital murder after April 29, 2003.  Code § 19.2-264.3:1.1(C) specifically refers to the mental retardation determination taking place "as part of the sentencing proceeding required by § 19.2-264.4."  Code § 19.2-264.4 is the general sentencing proceeding statute applicable upon a finding that a defendant is guilty of an offense that may be punishable by death.  Such a proceeding is limited to determining whether the defendant shall be sentenced to death or life imprisonment.  See Code § 19.2-

10

264.4.  It is a criminal proceeding.

The procedures set forth in Code §§ 19.2-264.3:1.1 and 19.2-264.3:1.2 apply to all determinations of a defendant's mental retardation relevant to a capital sentencing.  Under the statutory scheme approved by the General Assembly, the same procedure applies for determining a defendant's claim of mental retardation arising in a capital murder case, whether the claim is raised by a defendant charged with or convicted of capital murder after April 29, 2003 or by a person sentenced to death before April 29, 2003.

This unitary procedure imposed by the statutory scheme appears to have been designed to provide those individuals, whose claims of mental retardation are remanded to the circuit court pursuant to Code § 8.01-654.2, the same procedural protections and rights as are given to defendants charged with or convicted of a capital offense after the Atkins v. Virginia decision.  The Commonwealth argues that the specific proceeding, on remand, to determine the mental retardation of individuals, such as Burns, whose claims of mental retardation were brought before this Court by way of a writ of habeas corpus should be treated as civil proceedings, while those specific proceedings ordered after consideration of a direct appeal should be treated as criminal proceedings, providing different constitutional rights on remand based upon the context in which the issue was

11

raised. The Commonwealth is correct that, pursuant to Code § 8.01-654.2, the remanded claim of mental retardation is adjudicated in a special proceeding in circuit court. However, the nature of the proceeding conducted on remand is not governed by the context in which the issue was raised before this Court, but rather by consideration of the legislative objective of the statute which created it. See Burns v. Warden, 269 Va. at 353, 609 S.E.2d at 610; Smith, 538 U.S. at 92-93.

The mandated use of a unitary criminal procedure for determining mental retardation, along with consideration of the constitutional protection such determinations are designed to afford, indicate that the General Assembly intended that all claims remanded, pursuant to Code § 8.01-654.2, be treated as criminal proceedings. Therefore, we hold that the proceedings to determine the mental retardation of a person sentenced to death, undertaken upon remand of a case to the circuit court pursuant to Code § 8.01-654.2, are criminal in nature. Any person whose claim is so remanded shall be afforded, in such proceeding, the same rights as those afforded to a defendant in a criminal sentencing proceeding.

The statutory scheme indicates that a mental retardation determination conducted upon remand to the circuit court is a part of a capital murder case, and that proceeding is criminal in nature. The purpose of determining the mental retardation of

12

a person charged with or convicted of capital murder is the same in all capital murder cases in which the issue arises — whether the defendant's mental retardation should prohibit the defendant's execution. This case, which was remanded to the circuit court pursuant to Code § 8.01-654.2, is no different. Our directions to the circuit court stated:

> [U]pon a finding that Burns is not mentally retarded, the sentence of death entered on May 12, 2000 remains in full force and effect. Upon a finding that Burns is mentally retarded, the trial court shall enter an order vacating the sentence of death and re-sentencing Burns in accordance with Code § 19.2-264.3:1.1(D).

Burns v. Warden, 269 Va. at 354, 609 S.E.2d at 611.

Code § 8.01-654.2 is a transitional statute that the General Assembly enacted to address the rights of a limited number of capital murder defendants. Id. The General Assembly promulgated Code § 8.01-654.2 to allow certain defendants sentenced to death before April 29, 2003 the opportunity to present their claims of mental retardation. When those mental retardation claims are found by this Court to be "not frivolous," Code § 8.01-654.2 creates a dispositional vehicle, which allows those defendants the same protections and procedures concerning the presentation of their mental retardation claims given to individuals charged or convicted of capital murder after April 29, 2003. All the proceedings on remand pursuant to Code § 8.01-654.2 must be criminal in nature

13

in order to carry out the intent of the General Assembly.

Rule 3:20 allows summary judgment to be entered in civil actions. However, Part 3 of the Rules of the Supreme Court of Virginia only applies to civil actions. Rule 3:1. Because the proceeding remanded pursuant to Code § 8.01-654.2 was criminal in nature, the circuit court erred in granting summary judgment to the Commonwealth.

The Supreme Court of the United States has held that trying an incompetent criminal defendant violates the right to due process. Cooper v. Oklahoma, 517 U.S. 348, 354 (1996); Medina v. California, 505 U.S. 437, 453 (1992). A defendant is considered incompetent if he does not have the present ability to consult with his lawyer "with a reasonable degree of rational understanding [and] a rational as well as factual understanding of the proceedings against him." Cooper, 517 U.S. at 354 (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)). Because the remanded proceeding was criminal in nature, the circuit court erred in ruling that Burns' competence was irrelevant and in refusing to adjudicate Burns' competence.

Upon review of the record and upon consideration of the arguments presented, we find reversible error in the judgment of the circuit court. Accordingly, for the reasons stated, we will reverse the circuit court's judgment and remand the case to the

14

circuit court for further proceedings consistent with this opinion and this Court's order entered on March 11, 2005.

Reversed and remanded.